CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
June 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:19-CR-71 |
| v. | ) |
| | ) |
| DESHAUN JAMELLE WHITE, | ) |
| | ) By: Michael F. Urbanski |
| Defendant | ) Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Deshaun Jamelle White's pro se motion for early termination of supervised release. ECF No. 122. For the reasons stated below, the court **DENIES without prejudice** White's motion.

On July 25, 2019, White was indicted on five counts related to distribution of methamphetamine and heroin. Indictment, ECF No 3. Pursuant to a written plea agreement, White pled guilty to one count of distribution of 50 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Plea Agreement, ECF No. 43. On December 30, 2019, White was sentenced to a term of 60 months, to be followed by a 4-year term of supervised release. J., ECF No. 54. On November 30, 2022, White was released from custody to begin serving his term of supervision. ECF No. 104.

The court sought input from the United States Probation Officer who supervises White. The officer confirmed that while White has done well for the most part, he did test positive for fentanyl once in January 2023, early in his period of supervision. All drug screens since that time have been negative. In July 2023 a search of White's home by the United States Probation Office turned up a quantity of heroin in the attic of the home, but the subsequent

1

state court drug charge was dismissed because there was no evidence that White was aware of or had access to the drugs found in the attic. In another incident, White's girlfriend alleged that he threatened her with a gun on a video call. White claimed the gun was a toy, but he could not produce the toy when asked to do so. The government is opposed to early termination for White based on the incidents described here. Resp., ECF No. 124.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a period of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (4) any pertinent policy statement issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities among defendants; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States

2

v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors and looking at the nature and circumstances of the offense, White was convicted after being recorded selling methamphetamine and heroin to a confidential informant four times. Pre-Sentence Investigation Report, PSR, ECF No. 76 ¶¶ 6–9. White was found responsible for 242.1 kilograms of converted drug weight. Id. at 12. White was convicted of violating 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). The statute of conviction requires a term of supervised release "of at least four years" and White has not yet completed half of that period. The fact that White has completed less than half of the minimum period required by Congress weighs against early termination.

Regarding White's history and characteristics, his criminal history is extensive. Between the ages of 20 and 30, White had 20 convictions for various misdemeanor and felony offenses,

3

including felony embezzlement, obstruction of justice, and possession of cocaine. Id. ¶¶ 30–50. While many of the convictions were for minor offenses, such as driving under a suspended or revoked license, their frequency is concerning.

White reported that he first drank alcohol and smoked marijuana as a child and that he was drinking and smoking daily prior to his arrest. He also reported that he started using heroin in 2018 and was using approximately an "8-ball" daily before his arrest. Id. ¶ 78. White's extensive criminal history and his history of drug abuse, coupled with the relatively short time he has been on supervised release, weigh against early termination of supervised release.

White's conduct on supervised release thus far has been mixed. He has had only one positive drug screen which occurred more than a year ago. He maintained employment for approximately one year and has not been able to work since being shot in a night club. White's ex-girlfriend accused him of threatening her with a gun while on a video call and at that time, he claimed that it was a toy gun. However, in his reply to the government's response to his motion, White stated that his ex-girlfriend called his probation officer to make a false accusation after White was awarded full custody of the child they have together. Reply, ECF No. 125 at 1.

The court credits White with testing negative for drugs, staying employed for a year, and obtaining a driver's license. However, the court believes that White can continue to benefit from supervision by his probation officer. The primary goal of supervised release "'is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and

4

training programs after release.'" United States v. Lewis, 90 F.4th 288, 294 (4th Cir. 2024) (quoting S. Rep. No. 98-225 at 124 (1983) (reprinted in 1984 U.S.C.C.A.N. 3182, 3307)), cert. denied, U.S. No. 23-7145, 2024 WL 2116463 (U.S. May 13, 2024). The court believes that continuing White's period of supervision will best serve the purposes of supervised release for him in his present circumstances.

Looking at the need for the sentence to provide deterrence to criminal conduct and protect the public, the court finds that having White remain on supervised release will provide benefits to both White and the public. White has been mostly successful on supervised release which likely is due in part to the structure and guidance he has received from his probation officer. Having White continue on supervised release will allow him to continue to benefit from the support and direction his probation officer provides and will increase the chances that he will enjoy long-term success when his supervision ends.

Regarding the established sentencing range for the category of White's offense, he faced a minimum term of four years of supervised release under 21 U.S.C. § 841(b)(1)(B). The fact that he is serving the minimum term of supervised release and has not yet completed half of that term weighs against early termination. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

Having considered the § 3553(a) factors and the opinion of the probation officer overseeing Whites's supervised release, the court **DENIES without prejudice** White's motion for early termination. To be sure, most of White's accomplishments to date on supervision are positive. Nevertheless, the court remains concerned about the stability of White's success given his long criminal history, and the fact that he has not yet served two

5

years of his term of supervision. Having White remain on supervised release will provide him with an additional period of guidance and serve to protect the community.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: June 5, 2024

Michael F. Urbanski
Chief United States District Judge